# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Grinnell Mutual Reinsurance Company,

                     Plaintiff,         Civ. No. 10-4489 (SRN/FLN)

v.                                      **MEMORANDUM OPINION AND ORDER**

John Moon, Beverly Schultz, and Melissa
Thomas, Trustee for the Heirs and Next of
Kin of Ermand Schultz, and Western
National Mutual Insurance Company,

                     Defendants,

and

John Moon,

                     Third-Party Plaintiff,

v.

Lange Associates, Inc.,

                     Third-Party Defendant.

Curtis D. Ruwe, Beth A. Jenson Prouty, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, Minnesota, for Plaintiff.

Steven S. Torvik, Nelson Oyen Torvik PLLP, Montevideo, Minnesota, for Defendant/Third-Party Plaintiff John Moon.

Anthony J. Nemo, Meshbesher & Spence, Ltd, Minneapolis, Minnesota, for Defendants Beverly Shultz and Melissa Thomas.

Paula Duggan Vraa, John M. Bjorkman, Larson King, LLP, Saint Paul, Minnesota, for Defendant Western National Mutual Insurance Company.

Patrick M. Biren, Jessie Erin Rosenthal, Brownson & Ballou, PLLP, Minneapolis, Minnesota, for Third-Party Defendant Lange Associates, Inc.

# INTRODUCTION

This action arises out of an April 2010 automobile accident in which Beverly and Ermand Schultz's car collided with a tractor-trailer owned by Defendant John Moon, which was hauling crushed cars. As a result of the collision, Beverly suffered serious injuries and Ermand died. Moon had purchased insurance for the tractor-trailer from Plaintiff Grinnell Mutual Reinsurance Company ("Grinnell") through Lange Associates, Inc. ("Lange"), an insurance agency.

On November 8, 2010, Grinnell filed the instant action, seeking a declaration that no coverage exists for the accident due to the policy's "business" exclusion. Moon, in turn, filed a Third-Party Complaint, asserting negligence against Lange for failing to provide adequate insurance. Western National Mutual Insurance Company ("Western National"), which insured the Schultzes at the time of the accident, later intervened as a Defendant.

Presently before the Court are (1) Western National's and Grinnell's Cross-Motions for Summary Judgment and (2) Lange's Motion for Summary Judgment on Moon's Third-Party Complaint. For the reasons that follow, the Court will grant Grinnell's Motion, deny Western National's Motion, and decline to exercise jurisdiction over Moon's Third-Party Complaint.

# BACKGROUND

Moon operates a business known as Moon Creek Ranch, which primarily raises cattle and crops, engages in direct marketing of beef, caters cookouts, raises and sells hay and mulch, and hauls beets. (Moon Dep. at 7, 11.) He owned a 1996 Freightliner truck

and an attached Wilson trailer which he used to haul hay, straw, and mulch for his farming operations, and to haul beets for other local farmers.  (Id. at 29.)

In 2009, Moon purchased personal auto insurance with a farm truck endorsement through Bruce Larson, a Lange agent.  (Id. at 111–12; Ruwe Aff. Exs. 3 & 4.)  Both the Freightliner and the Wilson trailer were listed on this policy, which contains the following exclusion:

> We do not provide Liability Coverage for any "insured":
> …
> Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming, ranching, or hauling non-owned farm goods)[.]

(Ruwe Aff. Ex. 3 at 13.)  The policy further defined "business" and "non-owned farm goods" as follows:

> "Business" includes trade, profession or occupation.
> …
> "Non-owned farm goods" mean:
> 1. Livestock;
> 2. Fowl; or
> 3. Nonhazardous agricultural commodities or products not owned by [the insured].

(Id.)  Moon does not dispute that when they met to put the insurance in place, Larson verbally informed Moon that they could work together to adjust his policies should he want to use his trucks for commercial work.  (Larson Dep. at 21.)

A few weeks before the accident, Moon informed Jeff Flinn, an acquaintance who runs an auto parts operation, that he would be willing to haul crushed cars for him if he needed the help.  (Moon Dep. at 32–33.)  Flinn called Moon a few weeks later, and Moon agreed to use his Freightliner truck and Wilson trailer to haul crushed cars from

3

Montevideo, Minnesota, to Anoka, Minnesota, for Flinn.  (Id. at 34.)  They did not enter into a written contract, and they never discussed insurance.  (Id. at 40–41; Flinn Dep. at 12.)  Moon understood that Flinn would pay him for this work.  (Moon Dep. at 39.)  Moon then employed Chris Dorholt, who had hauled beets for Moon Creek Ranch in the past, to drive the truck hauling the crushed cars.  (Id. at 35.)  Before each trip, Moon signed a bill of lading for Flinn.  (Ruwe Aff. Ex. 8.)  This is the only document that Flinn has drivers sign before hauling for him.  (Flinn Dep. at 12.)  Dorholt made trips on April 23, 28, and 29, 2010.  (Moon Dep. at 35, 41, 98–99.)  Flinn never paid Moon for hauling the cars.  (Id. at 35.)

In preparation for the hauls, Moon obtained commercial license plates for the tractor-trailer.  (Id. at 36.)  This was to avoid being stopped by law enforcement for having farm plates and hauling non-farm goods.  (Id. at 40, 90.)  He paid $1,300 for the plates and intended to cancel them once the hauling was complete.  (Id. at 40.)  Moon did not obtain new insurance at the time because he considered hauling for Flinn a one-time event and "thought" that the truck would be covered under his existing policy.  (Id. at 36, 38, 43, 119–20.)

On April 29, while Dorholt was hauling the final load, the tractor-trailer collided with the Schultz's car.  Beverly was seriously injured, and Ermand and Dorholt both died.  Grinnell later filed the instant action, seeking a declaration that the policy affords no coverage to Moon for claims arising out of the collision.  Moon filed a Third-Party Complaint against Lange, asserting that if Grinnell is successful in disclaiming coverage, then Lange was negligent in procuring insurance that did not protect him from this

incident. Western National, which provided no-fault and uninsured motorist coverage to the Schultzes at the time of the collision, intervened in the case and asserted that resolution of Grinnell's declaratory action will affect a pending indemnity claim[1] with Grinnell and could expose Western National to uninsured motorist liability.

Grinnell and Western National have cross-moved for summary judgment on the issue of coverage, and Lange moved for summary judgment with respect to Moon's Third-Party Complaint. The issues have been fully briefed, the undersigned heard argument on January 27, 2012, and the Motions are now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty

---

[1] The Schultzes filed separate lawsuits against Moon in Chippewa County, Minnesota, which await the disposition of the instant case to proceed.

5

Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering Grinnell's Motion, the Court views the record in the light most favorable to Western National, and when considering Western National's Motion, the Court views the record in the light most favorable to Grinnell. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011).

## ANALYSIS

### I. The "Business" Exclusion

The key issue in this case is whether Moon's hauling crushed cars falls within the business exclusion in the Grinnell policy.[2] State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). In Minnesota, "the interpretation of insurance contract language is a question of law." Meister v. W. Nat'l Mut. Ins. Co., 479 N.W.2d 372, 376 (Minn. 1992). Courts interpret unambiguous policy language "in accordance with its plain and ordinary meaning." Ill. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 799 (Minn. 2004). When an insurance policy's language is ambiguous, however, the

---

[2] An insurer owes an insured two duties: the duty to defend and the duty to indemnify. These two duties are interrelated, but distinct. Because nothing in the record requires the duties to be addressed separately and the parties have not distinguished between the separate duties, the Court will address only the issue of coverage.

Court will construe that language against the drafter and in favor of the insured. <u>Nathe Bros. Inc. v. Am. Nat'l Fire Ins. Co.</u>, 615 N.W.2d 341, 344 (Minn. 2000). Furthermore, when an insurer argues that an exclusion bars coverage, it bears the burden of establishing that the exclusion applies and the exclusion is strictly construed against the insurer. <u>SCSC Corp. v. Allied Mut. Ins. Co.</u>, 536 N.W.2d 305, 311–14 (Minn. 1995); <u>Milwaukee Mut. Ins. Co. v. Snyder</u>, 356 N.W.2d 780, 783 (Minn. Ct. App. 1984).

Grinnell asks the Court to determine as a matter of law that the Policy's "business" exclusion bars coverage here. The exclusion provides: "We do not provide liability coverage for any 'insured' . . . [m]aintaining or using any vehicle while that 'insured' is employed or otherwise engaged in any 'business' (other than farming or ranching, or hauling 'non-owned farm goods')". (Ruwe Aff. Ex. 3 at 13.) Under the policy, the term "'[b]usiness' includes trade, profession or occupation[,]" and "'non-owned farm goods' mean livestock, fowl, or nonhazardous agricultural commodities or products which are not owned by [the policy holder]." (<u>Id.</u> at 17; <u>id.</u> at 13.)

"Business" exclusions in liability policies are common in Minnesota. They are consistent with the business-risk doctrine and underlying public-policy concerns Minnesota courts have long recognized. Minnesota courts "ha[ve] defined business purposes in an insurance policy as 'a type of activity in which persons regularly engage for the purpose of earning a livelihood or for gain.'" <u>Smith v. State Farm Fire & Cas. Co.</u>, 656 N.W.2d 432, 436 (Minn. Ct. App. 2003) (quoting <u>Allied Mutual Casualty Co. v. Askerud</u>, 94 N.W.2d 534, 539-40 (Minn. 1959)). <u>Askerud</u> and <u>Reinsurance Ass'n of Minnesota v. Patch</u>, 383 N.W.2d 708 (Minn. Ct. App. 1986), declined to apply business

7

exclusions to the insureds' part-time activities that were unrelated to their main occupations. Askerud, 94 N.W.2d at 540 (building a house unrelated to full-time employment at Hormel Company); Patch, 383 N.W.2d at 712 (bicycle-repair hobby unrelated to full-time employment in construction).

Western National and Moon argue that such an interpretation of the business exclusion is too broad and lacks support under Minnesota law. They rely heavily on Patch, where a construction worker (Patch) repaired bicycles for a local hardware store on his free time and was unaware whether he generated any income from this hobby. 383 N.W.2d at 712. They liken Moon to Patch, characterizing his actions as a one-time, informal endeavor for a social acquaintance rather than a formal business arrangement. (Def.'s Mem. in Supp. of Summ. J. at 13.) Because Moon never advertised for commercial hauling and did not commercially haul for the purposes of earning a livelihood, they argue, the "business" exclusion does not apply. Western National and Moon also argue that because Moon is a farmer, hauling cars is not his "trade, occupation or profession" under the business exclusion clause.

The Court disagrees. In the present case, Flinn employed Moon to haul crushed cars from Montevideo to Anoka. This was more than an "oral understanding" that he would help on a project, Askerud, 94 N.W.2d at 536, and it was not an "informal arrangement" that Moon maintained "to keep his three children happy." Patch, 383 N.W.2d at 710. He agreed to haul crushed cars on specific dates and signed inventory slips in exchange for expected payment. He intended to make a profit on the endeavor. That he did not profit in the end and he only entered into this one agreement has no effect

8

on whether his activities are excluded from liability coverage.  He signed the paperwork that Flinn required of all of his drivers.  He procured commercial plates for his truck and trailer, hired a driver, and complied with Flinn's scheduling requirements.  He did not haul cars as a hobby in his spare time.   In Smith, a financial analyst who rented property on the side argued unsuccessfully that part-time conduct unrelated to the insured's primary occupation precluded a determination that the conduct was business.  656 N.W.2d at 436-37.  Western National's and Moon's argument is equally unpersuasive.  He entered into a formal arrangement to perform a specific task, within a specific time frame, with an expectation of payment upon completion.

It is apparent to the Court that Moon was engaged in "business" as the term is used in the Grinnell policy, and that Grinnell is not required to provide liability coverage for the April 2010 accident.  For these reasons, the Court finds the policy affords no coverage and it will grant Grinnell's Motion for Summary Judgment and deny Western National's Cross-Motion.

## II.     Moon's Third-Party Complaint

Moon's Third-Party Complaint asserts that Larson's failure to provide Moon commercial coverage was negligent.  This claim is appended to Grinnell's main claim and before this Court only under supplemental jurisdiction.  Although the parties have undertaken discovery and Lange has moved for summary judgment, no claims over which the Court has original jurisdiction remain and therefore the Court may choose whether to exercise supplemental jurisdiction over this pending state-law claim.  28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004).

When all federal claims are eliminated before trial, the balance of factors to be considered in deciding whether to exercise supplemental jurisdiction over state-law claims typically militates against exercising jurisdiction.  Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988).  Nothing in this case convinces the Court that it should deviate from this principle.  Accordingly, the Court declines to exercise supplemental jurisdiction over Moon's Third-Party Complaint, and it will dismiss that claim without prejudice.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Grinnell's Motion for Summary Judgment (Doc. No. 40) is **GRANTED,** Western National's Motion for Summary Judgment (Doc. No. 37) is **DENIED,** and because the Court declines to exercise supplemental jurisdiction over Moon's Third-Party Complaint (Doc. No. 12), it is **DISMISSED WITHOUT PREJUDICE**.[3]  Accordingly, Lange's Motion for Summary Judgment (Doc. No. 42) is **DENIED AS MOOT.**

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 27, 2012                                         s/Richard H. Kyle
                                                                                RICHARD H. KYLE
                                                                                United States District Judge

---

[3] See generally 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").